[Cite as *Athens Cty. Fracking Action Network v. Simmers*, 2016-Ohio-5388.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Athens County Fracking Action Network, | : | |
| Appellant-Appellant, | : | |
| v. | : | No. 16AP-133 |
| Richard J. Simmers, Chief, Division of Oil and Gas Resources Management, Ohio Department of Natural Resources et al., | : | (C.P.C. No. 14CV-7132) |
| | : | (ACCELERATED CALENDAR) |
| Appellees-Appellees. | : | |
| | : | |

D E C I S I O N

Rendered on August 16, 2016

**On brief:** *Richard Sahli Law Office, LLC,* and *Richard C. Sahli*, for appellant. **Argued:** *Richard C. Sahli*.

**On brief:** *Michael DeWine*, Attorney General, *Daniel J. Martin, Brian A. Ball,* and *Jennifer A. Barrett*, for appellee Richard Simmers, Chief, Division of Oil and Gas Resources Management. **Argued:** *Jennifer A. Barrett*.

**On brief:** *Bowels Rice, LLP, Robert L. Bays,* and *J. Breton McNab*, for appellee K & H Partners, LLC. **Argued:** *J. Breton McNab.*

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Appellant-appellant, Athens County Fracking Action Network ("ACFAN"), appeals from a judgment of the Franklin County Court of Common Pleas affirming an order of the Ohio Oil and Gas Commission ("commission") dismissing ACFAN's appeal for lack of subject-matter jurisdiction. For the following reasons, we affirm.

## I.  Facts and Procedural History

{¶ 2}   In July 2013, appellee-appellee, K & H Partners, LLC ("K & H"), filed an application with the chief of the Ohio Department of Natural Resources, Division of Oil and Gas Resources Management ("chief" and "division"), for a permit to drill a new well for saltwater injection.  On December 9, 2013, the chief issued a drilling permit pursuant to R.C. 1509.05 authorizing K & H to drill the saltwater injection well.  The permit contained an itemized list of eleven "constructional conditions."  The first ten conditions set forth detailed specifications relating to the construction of the well.  The eleventh condition stated, "[K & H] shall notify the Division in writing prior to the initiation of injection operations and injection operations shall not commence until the Division provides [K & H] with written approval that authorizes injection.  Operational conditions to the permit shall be issued with the written approval."  (Dec. 9, 2013 Well Permit at 4.)

{¶ 3}   On January 7, 2014, ACFAN filed a notice of appeal with the commission, alleging that the December 9, 2013 permit was "unlawful and unreasonable."  (Jan. 7, 2014 Notice of Appeal at 2.)   A few weeks later, the chief filed a motion to dismiss ACFAN's appeal on the basis that the commission lacked subject-matter jurisdiction over the appeal.  K & H also moved to dismiss the appeal.  On June 12, 2014, the commission dismissed ACFAN's appeal for lack of subject-matter jurisdiction based on its finding that the December 9, 2013 drilling permit was not an appealable order of the chief.   On June 18, 2014, ACFAN moved for reconsideration of the dismissal of the appeal, submitting multiple documents in support, including an April 17, 2014 order of the chief permitting K & H "to Inject Brine or Other Waste Substances Pursuant to Ohio Revised Code 1509.22(D)."  ACFAN did not file a notice of appeal from the April 17, 2014 order of the chief permitting K & H to inject brine pursuant to R.C. 1509.22(D).  On July 9, 2014, the commission denied ACFAN's motion to reconsider.  The next day, ACFAN filed a notice of appeal in the trial court.

{¶ 4}   In February 2016, the trial court filed a decision affirming the commission's order dismissing ACFAN's appeal for lack of subject matter jurisdiction.  ACFAN appeals from the trial court's decision.

## II. Assignment of Error

{¶ 5}   ACFAN assigns the following error for our review:

> The court below erred in dismissing this appeal because, pursuant to the plain language of the controlling regulation, Ohio Adm. Code 1501:9-3-06, the permit being appealed is an "injection well permit" under 1509.22(D), which is an order over which the Ohio Oil and Gas Commission has appellate subject matter jurisdiction, *Chesapeake Exploration, L.C.C. v. Oil & Gas Comm.*, *135 Ohio St.3d 204 (Ohio 2013), 2013-Ohio-224, ¶ 17,* and is not a "drilling permit" under R.C. 1509.05 and 1509.06.

## III. Discussion

{¶ 6}   In its sole assignment of error, ACFAN asserts that the trial court erred in affirming the commission's dismissal of its administrative appeal. ACFAN argues that the December 9, 2013 permit was issued pursuant to R.C. 1509.22(D), not 1509.05 and 1509.06, and, therefore, the commission had jurisdiction over ACFAN's appeal. We disagree.

{¶ 7}   In an appeal arising from a commission order, this court determines whether the trial court abused its discretion in reviewing the order. *See Martz v. Div. of Mineral Resources Mgt.*, 10th Dist. No. 08AP-12, 2008-Ohio-4003, ¶ 13-14. However, our review is plenary on questions of law. *Id.* Here, the parties agree the issue presented is purely legal, and, thus, our review is plenary.

{¶ 8}   R.C. Chapter 1509 regulates oil and gas wells and production operations in Ohio. *State ex rel. Morrison v. Beck Energy Corp.*, 143 Ohio St.3d 271, 2015-Ohio-485, ¶ 1. "It is the public policy of the state of Ohio to encourage oil and gas production when the extraction of those resources can be accomplished without undue threat of harm to the health, safety and welfare of the citizens of Ohio." *Newbury Twp. Bd. of Twp. Trustees v. Lomak Petroleum (Ohio), Inc.*, 62 Ohio St.3d 387, 389 (1992). For an oil and gas owner and operator to drill a well in Ohio, it must obtain a drilling permit from the chief. *Simmers v. N. Royalton*, 10th Dist. No. 15AP-900, 2016-Ohio-3036, ¶ 2; *see State ex rel. Morrison* at ¶ 5 (pursuant to R.C. 1509.05, a state permit is required for any person seeking to drill a new oil and gas well). Such a drilling permit is obtained through the procedures outlined in R.C. 1509.06. *State ex rel. Morrison* at ¶ 5.

{¶ 9} The General Assembly created the commission as part of the state's regulation of oil and gas production operations. R.C. 1509.35(A) ("There is hereby created an oil and gas commission consisting of five members appointed by the governor.") Because the commission is a creation of state law, "its powers and duties extend only so far as the statutes grant authority, while being constrained by whatever limits the statutes impose." *Delaney v. Testa*, 128 Ohio St.3d 248, 2011-Ohio-550, ¶ 20. "When the General Assembly grants an administrative agency power to hear appeals, the statutory language determines the parameters of the agency's jurisdiction." *Cuyahoga Cty. Bd. of Cty. Commrs. v. Daroczy*, 10th Dist. No. 08AP-123, 2008-Ohio-5564, ¶ 17. Pursuant to R.C. 1509.36, "[a]ny person adversely affected by an order by the chief of the division of oil and gas resources management may appeal to the oil and gas commission for an order vacating or modifying the order." A permit to drill a new well is not an order of the chief. *Chesapeake Exploration, L.L.C. v. Oil & Gas Comm.*, 135 Ohio St.3d 204, 2013-Ohio-224, ¶ 14, citing R.C. 1509.06(F) ("The issuance of a permit shall not be considered an order of the chief."). Therefore, although R.C. 1509.36 generally confers appellate jurisdiction on the commission over appeals from orders of the chief by persons adversely affected, "R.C. 1509.06(F) manifestly divests the commission of appellate jurisdiction over the chief's decisions to issue permits for oil and gas wells." *Id.* at ¶ 15.

{¶ 10} Here, ACFAN appealed to the commission from a decision of the chief authorizing K & H to drill a well for the injection of brine created as a byproduct of oil and gas production. ACFAN generally argues that the decision, from which it appealed, was an order issued pursuant to R.C. 1509.22(D). That statute regulates the injection of brine and other waste substances into underground formations and states in pertinent part:

> No person, without first having obtained a permit from the chief, shall inject brine or other waste substances resulting from, obtained from, or produced in connection with oil or gas drilling, exploration, or production into an underground formation unless a rule of the chief expressly authorizes the injection without a permit. *The permit shall be in addition to any permit required by section 1509.05 of the Revised Code*[.]

(Emphasis added.) R.C. 1509.22(D)(1).

{¶ 11} R.C. 1509.22(D)(1) further provides that the chief must adopt rules "in accordance with Chapter 119. of the Revised Code regarding the injection into wells of brine and other waste substances resulting from, obtained from, or produced in connection with oil or gas drilling, exploration, or production."  The adopted rules must include provisions regarding applications for and issuance of the permits required by R.C. 1509.22(D).  R.C. 1509.22(D)(1)(a).  To this end, the division has adopted Ohio Adm.Code 1501:9-3-06, which sets forth the permitting rules regarding the injection of brine and other waste substances into a well.  Additionally, although a permit issued by the chief authorizing an oil and gas operator to drill a well is not appealable, a permit issued by the chief authorizing an oil and gas operator to inject brine or other waste substances into an underground formation is appealable to the commission.  *Chesapeake Exploration, L.L.C.* at ¶ 17.

{¶ 12} As it relates to the promulgation of injection well permitting rules under R.C. 1509.22(D), ACFAN argues that R.C. 1509.22(D) authorizes, but does not require, the chief to issue a separate drilling permit under R.C. 1509.05.  ACFAN asserts that Ohio Adm.Code 1501:9-3-06 only provides for one permit for both the drilling of an injection well and the injection of the waste into the drilled well.  According to ACFAN, the appealed December 9, 2013 permit authorizing K & H to drill the well was the single injection well permit issued under R.C. 1509.22(D), and, as such, was appealable to the commission.  In effect, ACFAN reasons that a permit authorizing the drilling of a well is not appealable, unless the well is being drilled for the purpose of injecting brine or another waste substance in connection with oil or gas production.  We disagree with ACFAN's reasoning.

{¶ 13} ACFAN's arguments ignore R.C. 1509.22(D)'s requirement that any permit issued under that section "shall be in addition to any permit required by section 1509.05 of the Revised Code."  Considering this clear and unambiguous language, a permit to inject brine into a well issued pursuant to R.C. 1509.22(D) is separate from a permit for the drilling of the well required by R.C. 1509.05.  While ACFAN argues Ohio Adm.Code 1501:9-3-06 contemplates only one permit, the express language of R.C. 1509.22(D) provides otherwise.  Administrative rules may not add to or subtract from a legislative enactment, and a rule is invalid if it clearly conflicts with any statutory provision.  *Cent.*

*Ohio Joint Vocational School Dist. Bd. of Edn. v. Admr., Ohio Bur. of Emp. Servs.*, 21 Ohio St.3d 5 (1986).  Thus, if we would construe Ohio Adm.Code 1501:9-3-06 as ACFAN contends, to allow for only one permit, the rule would be invalid because it would conflict with R.C. 1509.22(D) which provides for multiple permits.

{¶ 14} Here, the appealed decision of the chief, authorizing K & H to drill the injection well, was required by R.C. 1509.05.  R.C. 1509.05 states that "[n]o person shall drill a new well, drill an existing well any deeper, reopen a well, convert a well to any use other than its original purpose, or plug back a well to a source of supply different from the existing pool, without having a permit to do so issued by the chief of the division of oil and gas resources management."  For the purpose of R.C. 1509.05, "well" means "any borehole, whether drilled or bored, within the state for production, extraction, or injection of any gas or liquid mineral, excluding potable water to be used as such, but including natural or artificial brines and oil field waters."  R.C. 1509.01(A).  "Brine" means "all saline geological formation water resulting from, obtained from, or produced in connection with exploration, drilling, well stimulation, production of oil or gas, or plugging of a well."  R.C. 1509.01(U).  In view of these definitions, and contrary to ACFAN's arguments, R.C. 1509.05 does not set forth an exemption for the drilling of wells that will be used for brine disposal.  Instead, that section expressly applies to the drilling of wells to be used for the injection of brine created as a byproduct of oil or gas production.  Because R.C. 1509.05 required K & H to obtain a permit under R.C. 1509.06 to drill the brine injection well, the permit the chief issued pursuant to R.C. 1509.22(D) was "in addition to" the December 9, 2013 permit.

{¶ 15} The permit the chief issued pursuant to R.C. 1509.22(D), authorizing K & H to inject brine into an underground formation, was appealable to the commission but ACFAN did not appeal that permit.  However, the separate permit the chief issued pursuant to R.C. 1509.05 and 1509.06, authorizing K & H to drill the injection well, was not appealable.  Because ACFAN only appealed the permit to drill the injection well, the commission did not have jurisdiction over the appeal.  *See Chesapeake Exploration, L.L.C.*  Therefore, the trial court properly affirmed the commission's dismissal of the appeal.  Accordingly, we overrule ACFAN's sole assignment of error.

## IV.  Disposition

{¶ 16} Having overruled ACFAN's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK and BRUNNER, JJ., concur.

———————————————